291 A.2d 263.

MERRITT LAND CORPORATION *vs.* ANGELO MARCELLO,
*Director of Department of Public Works of the
State of Rhode Island.*

MAY 25, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. The plaintiff, whose land was condemned by the state, brought this action against the Director of the Department of Public Works of the State of Rhode Island and later added the State Properties Committee as a party defendant. The complaint, as amended, contains a prayer that the director be ordered to reinstate an offer of $264,990 allegedly made by the state, that he be ordered to pay the plaintiff 75 per cent of $264,990, and that a writ of mandamus issue against the State Properties Committee or-

dering it to pay the plaintiff 75 per cent of $264,990 forthwith.

The facts are substantially undisputed. The plaintiff was the owner of certain property which was located in the towns of East Greenwich and North Kingstown. The state condemned this property for highway purposes and by letter dated October 17, 1967, offered plaintiff the sum of $264,990. The letter contains the following pertinent statements:

> "Based upon an appraisal of the property the State, *subject to the approval of the State Properties Committee,* is authorized to pay to you * * * the sum of * * * ($264,990.00) in full settlement of all claims arising from said taking * * *.

> "If said offer is acceptable as full compensation for said property taken, sign the enclosed *FORM A* and return it in the enclosed envelope. If said offer is not acceptable, you must, within one (1) year from the date of condemnation, file a petition in the Superior Court requesting a trial for the assessment of your damages. In any event, the law requires that you make application to the State Properties Committee for the payment of seventy-five percent (75%) of the State's offer within thirty (30) days from the date of this offer. Application for this partial payment is without prejudice to your right, at a later date, to either accept the offer contained herein or to file a petition as aforesaid. In no event will the State pay interest on seventy-five percent (75%) of said offer beyond thirty (30) days from date of this offer. An application for said partial payment, *FORM B,* is enclosed. Sign and return in the enclosed envelope."

The plaintiff's president executed Form B and delivered it to the Department of Public Works on October 20, 1967. Form B, which is dated October 20, 1967, and signed by plaintiff's president, reads as follows:

> "The undersigned hereby makes application to the State Properties Committee for the payment of seventy-five percent (75%) of the State's offer, as re-

quired by law, said offer being *Two Hundred Sixty-four Thousand Nine Hundred Ninety Dollars.* It is understood that application for this partial payment is without prejudice to my right, at a later date, to either accept said offer or to file a petition for the assessment of damages in the Superior Court within one (1) year from the date of condemnation."

The State Properties Committee met on November 7, 1967 and November 14, 1967. The minutes of the November 7 meeting indicate that plaintiff's application for an advance payment was deferred one week and the minutes of the November 14 meeting contain the following notation: "(reconsideration) (deferred for one week.)"

On November 14, 1967, the Department of Public Works sent plaintiff a letter withdrawing the October 17, 1967 offer for reasons stated therein.

On April 2, 1968, the State Properties Committee met and approved the State's offer of $264,990 and also voted approval of the 75 per cent advance, which amounted to $198,742.50.

On June 20, 1968, the state made a new offer to plaintiff in the sum of $113,000. This offer was made by a letter which, except for the amount, contains the same instructions as were included in the October 17, 1967 letter. The plaintiff executed the Form B application for 75 per cent of the $113,000 and sent it to the Department of Public Works. This Form B application is dated June 24, 1968. The documents in evidence indicate that the State Properties Committee, on June 19, 1968, approved the 75 per cent advance of $113,000, namely, $84,750.

On July 30, 1968, plaintiff filed its Petition for Assessment of Damages in the Superior Court. This petition is docketed in that court as M. P. No. 7900.[1]

---

[1]In November 1969 that petition was heard before a justice of the Superior Court, without a jury, and resulted in a judgment for plaintiff for $225,440 plus interest. No appeal was taken, execution issued forth-

On September 23, 1968, while the Petition for Assessment of Damages was pending, plaintiff commenced the instant proceeding which was subsequently heard before a justice of the Superior Court, without a jury, on June 10, 1969, and resulted in a decision and judgment for defendant.

The plaintiff's first two contentions are (1) that the mandate of the proviso in G. L. 1956 (1969 Reenactment) §37-6-17, made the payment of 75 per cent of $264,990 mandatory on the State Properties Committee once plaintiff applied for such advance, and (2) that the mailing of the letter by the state on October 17, 1967, and the delivery of Form B by plaintiff to the Department of Public Works on October 20, 1967, created a binding and irrevocable contract at least as to the 75 per cent of the $264,990 offer, namely, $198,742.50[2]

From what we have pointed out in note (1) above, it is obvious that plaintiff has already received more than the 75 per cent to which it claims it was entitled under §37-6-17. In the circumstances, even if we assume that plaintiff's first two points are correct, since it has already received more than it is claiming, no further consideration of plaintiff's claim to 75 per cent of $264,990 is necessary or required.

We consider next plaintiff's contention that it is entitled to a minimum of $264,990 as just compensation for the taking of its property. It argues here that there was a binding contract by the state to pay such sum. It bases this argument on its claim that the state made an offer of

with and was duly satisfied. Although the papers in M.P. No. 7900 were not included in the record transmitted here, we have, on our own volition, sent for them and, after examination, find that the facts herein set forth are correct.

[2]The pertinent statutes are G. L. 1956 (1969 Reenactment) §§37-6-17 and 37-6-18, which are attached hereto as Appendix A and Appendix B, respectively.

such amount to it and that it accepted such offer prior to its being withdrawn. The trial justice in his decision found that there was no binding contract. We agree with his conclusion and for the reasons which follow affirm the judgment appealed from.

We consider first the governing statute here. As the trial justice so clearly pointed out, §37-6-17 is divided into two parts. The first part provides in pertinent part as follows:

> "If any party shall agree with the acquiring authority upon the sum to be paid for the value of the land or other real property so taken * * * and such price shall be approved by the state properties committee, the same shall be paid to him forthwith * * *."

The language of this portion of the statute is, in our judgment, clear. In order for this part to be applicable, two things must happen. First, there must be an agreement between the acquiring authority and the land owner upon the sum to be paid and, second, the price thus agreed upon must have the approval of the State Properties Committee.

It is clear from what transpired in this case that there was no agreement between the parties within the contemplation of this part of the statute. On October 17, 1967, the state offered plaintiff $264,990. If the plaintiff had accepted that offer and the State Properties Committee had then approved it, there would have been a binding contract and the state would have been obligated to pay said amount pursuant to the mandate of this part of the statute. The plaintiff did not accept the state's offer; on the contrary plaintiff, by executing and delivering Form B to the Department of Public Works, indicated its intention not to accept the state's offer but instead to vindicate its claim pursuant to the provisions of the second part of §37-6-17, which provides in pertinent part as follows:

" * * * provided, however, that if any party shall fail to agree with the acquiring authority upon the sum to be paid for the value of the land or other real property so taken * * * then, the state properties committee, upon the application of said party in interest * * * shall order paid forthwith to the party or parties so applying for or on account of the just compensation to be awarded under a petition filed or to be filed in the superior court for the assessment of damages in accordance with the provisions of this chapter not less than seventy-five per cent (75%) of the acquiring authority's offer pending final disposition of the court proceeding."

It is clear from the language of the statute that the 75 per cent provision arises only if the offer is not accepted and that an application by a condemnee for a 75 per cent advance does not bind the state to pay 100 per cent of the offer. Moreover, a reading of the state's October 17, 1967 letter offering $264,990 and of plaintiff's October 20, 1967 application for a 75 per cent advance under the second part of the statute is clear proof that plaintiff had not accepted the state's offer at that time. Although the October 17, 1967 letter stated that application for the partial payment was without prejudice to plaintiff's right, at a later date, either to accept the offer contained therein or to file a petition for assessment of damages, there is nothing in this record indicating plaintiff's acceptance of the state's offer at a later date.

Under §37-6-17 the state's offer was conditional upon the approval of the State Properties Committee. The plaintiff's contention that this was a condition subsequent is so lacking in merit as to require no further discussion. As previously stated, prior to any action by the State Properties Committee on the plaintiff's application for the 75 per cent advance, the state, on November 14, 1967, withdrew its October 17, 1967 offer. Notice of this withdrawal was given to the plaintiff by letter. No citation of authority

is needed to support the right of an offerer to terminate his offer by withdrawing it at any time before acceptance. After the withdrawal of this offer by the state there was nothing for the State Properties Committee to approve and consequently its action on April 2, 1968 purporting to approve the October 17, 1967 offer was a complete nullity and utterly void.

For the reasons stated we hold that there was no binding contract obligating the state to pay $264,990.

The judgment is affirmed.

## APPENDIX A

37-6-17. Payment of agreed price for land condemned.—If any party shall agree with the acquiring authority upon the sum to be paid for the value of the land or other real property so taken and of appurtenant damage to any remainder or for the value of his estate, right or interest therein, and such price shall be approved by the state properties committee, the same shall be paid to him forthwith; and the state controller is authorized and directed, upon receipt by him of proper and duly authenticated vouchers, to draw his order upon the general treasurer for the payment of the agreed price out of any funds appropriated and available therefor; provided, however, that if any party shall fail to agree with the acquiring authority upon the sum to be paid for the value of the land or other real property so taken and of appurtenant damage to any remainder or for the value of his estate, right or interest therein, then, the state properties committee, upon the application of said party in interest and of joinder of all other parties in interest shall order paid forthwith to the party or parties so applying for or on account of the just compensation to be awarded under a petition filed or to be filed in the superior court for the assessment of damages in accordance with the provisions of this chapter not less than seventy-five per cent (75%) of the acquiring authority's offer pending final disposition of the court proceeding. The verdict and the judgment thereafter

entered in said court proceeding shall not include any item for interest upon such amount as shall be or could have been ordered paid by the state properties committee on account of the just compensation for any period of time from and after thirty (30) days following the making in writing of the acquiring authority's offer.

### APPENDIX B

37-6-18. Petition for assessment of damages by jury. —Any owner of, or any person entitled to any estate or right in, or interested in any part of the land or other real property so taken, who cannot agree with the acquiring authority upon the price to be paid for his estate, right or interest in such land or other real property so taken and the appurtenant damage to the remainder, may within one (1) year from the filing of the description and statement aforesaid apply by petition to the superior court in the county of Providence or to the superior court for one of the counties in which said land or other real property may be situated, setting forth the taking of his land or his estate or interest therein and praying for an assessment of damages by a jury. Upon the filing of such petition, the court shall cause twenty (20) days' notice of the pendency thereof to be given to the acquiring authority by serving the head thereof with a certified copy thereof and by leaving certified copies thereof at the office of the attorney-general and at the office of the state properties committee.

*Alton W. Wiley,* for plaintiff.

*Richard J. Israel,* Attorney General, *Alexander G. Teitz,* Special Asst. Attorney General, for defendant.