Cyrus BINA, Plaintiff–Appellant,

v.

PROVIDENCE COLLEGE, et al., Defendants–Appellees.

No. 94–1263.

United States Court of Appeals, First Circuit.

Heard Sept. 16, 1994.

Decided Nov. 4, 1994.

Robert B. Mann, with whom Mann & Mitchell and Harold Krause, Providence, RI, were on brief for appellant.

Richard P. McMahon, with whom Marifrances McGinn and McMahon & McMahon, Providence, RI, were on brief for appellees.

Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and KEETON,* District Judge.

KEETON, District Judge.

This is an action for ethnic discrimination in employment and breach of contract arising out of denial of an application for a tenure track position. For the reasons explained, we affirm the judgment of the district court for defendants.

## I. Background

In 1987, the Department of Economics of Providence College employed the plaintiff, Dr. Cyrus Bina, as an Adjunct Associate Professor. Dr. Bina, Iranian by birth, had received his Ph.D in the United States.

In April 1988, members of the Economics Department voted unanimously to recommend Dr. Bina for a tenure track position because they believed that his record of research and publication would strengthen the department. Under the College's rules and practices, both the Committee on Academic Rank and Tenure (CART) and the President of the College must approve an appointment. CART voted nine to zero against Dr. Bina's appointment.

Dr. William J. Simeone, Chair and Associate Professor of Economics at the College, asked Father John Cunningham, President of the College, to overrule CART. Father Cunningham responded that he lacked authority to do so, but at his extraordinary request CART reconsidered Dr. Bina's application on June 22, 1988. On June 26, CART voted four to three in favor of the appointment.

Dr. Francis MacKay, CART chairman and Vice President for Academic Affairs, sent Dr. Bina a letter on June 27 extending to him an invitation "to join the Ordinary Faculty of Providence College for the academic year 1988–89" as an Associate Professor of Economics. The letter made clear that Dr. Bina would have to serve a four year probationary period before receiving tenure. The letter stated that "[t]he offer is considered open and valid for 10 days from the date of this letter." Dr. MacKay further indicated that he would forward a contract to Dr. Bina "[w]hen you let us know in writing that our offer is acceptable to you."

In a July 1 meeting with Father Cunningham, Dr. Bina expressed his dissatisfaction with the probation condition of the offer. In fact, every tenured member of the department had served four years of probation. Father Cunningham explained that he could suggest only that Dr. Bina take his case to Dr. MacKay, and told Dr. Bina that "if necessary, the time [limit] could be extended for a few days." Dr. Bina immediately sought out Dr. MacKay, but was not able to obtain an audience with him until July 26, 1988. At that meeting, Dr. MacKay urged Dr. Bina to accept the original offer, but Dr. Bina refused.

* Of the District of Massachusetts, sitting by designation.

Dr. Bina was dismayed to receive a letter, dated August 3, from the Associate Vice President, writing by authority of Dr. Mac-Kay, informing him that the offer of a tenure track position extended on June 27, 1988, had expired. The August 3 letter also informed Dr. Bina that he could remain as an Adjunct Associate Professor through 1990, under his 1987 agreement with the College. Dr. Bina again turned to Father Cunningham for aid, this time by a letter (of August 11) consisting largely of a protest against his perceived mistreatment by the College. Dr. MacKay, responding on Father Cunningham's behalf, reiterated that the June 27 offer had expired without being accepted. On August 31, 1988, Dr. Bina finally wrote "to accept the offer of the tenure track position." But it was too late, and his contract as an Adjunct Associate Professor was renewed for 1988–89 on September 2.

Near the end of the 1988–89 academic year, CART again considered Dr. Bina for a tenure track position. This time, a committee consisting of three new members voted four to three not to offer Dr. Bina the position. It is not clear whether the position was subsequently filled or remained open.

On May 17, 1991, Dr. Bina brought suit against the College, Father Cunningham, and Dr. MacKay in federal district court, alleging ethnic discrimination in violation of 42 U.S.C. § 2000(e) *et seq.* (1988) (Title VII), 42 U.S.C. § 1981 (1988), and R.I.Gen.Laws § 42–112 *et seq.* (1990), and a pendent claim of breach of contract. After pretrial proceedings that narrowed issues and a four-day bench trial, the district court ordered judgment for defendants on all counts, 844 F.Supp. 77. We limit our discussion to the issues presented on appeal.

## II. Title VII Claim

Plaintiff contends that CART denied him a tenure track position in May 1989 because he is Iranian. In his brief, the plaintiff also raises the specter of discrimination because of his accent in speech, but does not develop this as an independent claim, so we do not address it separately.

## A. The District Court's Application of the Burden–Shifting Framework

Plaintiff's appeal rests largely on the argument that defendants did not meet their burden of articulating a legitimate, nondiscriminatory reason why Dr. Bina was not offered a tenure track position in May 1989. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). This argument, in turn, rests principally on a short exchange between the district court and one of the defendants' attorneys. On the last day of trial, in response to the court's question why CART did not offer Dr. Bina a tenure track position in May 1989, the College's attorney responded:

> Your Honor, CART is secret ballot. I have no idea why. It was the CART Committee and they made a decision in June of 1988. It was four to three in favor. In 1989 it was four to three against. I do not know why they decided the way they decided in either case.

According to plaintiff, this admission clinches his contention that defendants did not meet their burden of production. Defense counsel's moment of exceptional candor, however, is no smoking gun.

Plaintiff's heavy reliance on the above exchange displays a fundamental misinterpretation of the burden-shifting framework in Title VII cases and, in particular, of the nature of defendant's burden of production.

In deciding this appeal, we need not decide between plaintiff's and defendants' positions about whether plaintiff proved his prima facie case by a preponderance of the evidence. Plaintiff says he did. Defendants contend that plaintiff did not make out his prima facie case because the district court could not determine whether the position was given to someone outside the protected class or remained open, but found that "one or the other occurred." 844 F.Supp. at 80. The district court, however, addressed and put to rest defendant's argument when it made clear that the prima facie case could be met *either* by showing that the position was filled by someone outside the protected group, or that " 'the employer had a continued need for someone to perform the same work after [the

complainant] left.' " 844 F.Supp. at 84 (quoting *Cumpiano v. Banco Santander Puerto Rico,* 902 F.2d 148, 155 (1st Cir.1990) (internal quotation omitted)). Thus, one may reasonably interpret the District Court Opinion as finding, or at least assuming, that plaintiff met the burden of proving a prima facie case by a preponderance of the evidence.

We do not address plaintiff's argument that the district court erred in finding Dr. Bina unqualified for the position. We need not do so, not only because we are assuming that plaintiff proved his prima facie case, but also because the district court found that CART *considered* Dr. Bina unqualified, not that Dr. Bina was in fact unqualified.

We proceed to consider whether defendants met their burden of producing evidence that plaintiff's application was rejected for a legitimate, nondiscriminatory reason. *See Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95.

■ Under the *Burdine* structure for decision, a defendant does not have this burden until plaintiff proves the elements of the prima facie case by a preponderance of the evidence. As a pragmatic matter, however, "the defendant *feels* the 'burden' not when the plaintiff's prima facie case is *proved,* but as soon as evidence of it is introduced." *St. Mary's Honor Center v. Hicks,* —— U.S. ——, —— n. 3, 113 S.Ct. 2742, 2749 n. 3, 125 L.Ed.2d 407 (1993). There is thus no discrete moment at which a defendant, concluding that plaintiff has proved a prima facie case, must formally articulate nondiscriminatory reasons for the employment decision. *Id.* at ——, 113 S.Ct. at 2755. Rather, as Justice Scalia made clear in response to a concern of the dissent in *St. Mary's Honor Center,* "the defendant's articulated reasons *themselves* are to be found lurking in the record." *Id.* (internal quotations omitted).

■ It is precisely in the record that the district court, in this case, looked to find defendant's articulated reasons—and in a part of the record highlighted by counsel on both sides in the district court and on appeal. The minutes of the May 1989 CART meeting, reproduced in full in the district court opinion, reveal that several members of the committee agreed that "Dr. Bina is very hard to understand at times and often appears disorganized when lecturing to an audience." District Court Opinion at 10, n. 3. Two members strongly implied that Dr. Bina's teaching skills, as measured by student evaluations, had not improved since his application for the tenure track position the year before, when significant questions were raised about his teaching ability. Furthermore, the minutes of the May 1989 meeting reflect a concern about Dr. Bina's attitude toward the College. Some appeared to feel, partly on the basis of his declining the 1988 offer, that he held the College in contempt. The minutes thus "articulate" the College's reasons for denying Dr. Bina a tenure track position.

■ Even if these reasons were voiced by a minority of the committee members, their presence in this record is sufficient to meet the articulation burden. A "defendant need not persuade the court that it was actually motivated by the proffered reasons." *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. Thus, in this case defendants need not show, in order to meet their burden of production, that a majority of the committee were motivated by the reasons advanced by individual members, as reflected in the minutes.

■ Once the court received into the record evidence from which legitimate reasons for defendants' employment action could be gleaned, the burden of production was met. Defense counsel's statement that she was unaware why the committee voted as it did (on which plaintiff relies as if it were a binding admission of failure to articulate any nondiscriminatory reason) does not have the effect of striking from the record the articulation of nondiscriminatory reasons already there. A defendant's reasons for an employment decision are to be established "through the introduction of admissible evidence," not through nontestimonial statements by defendant's counsel. *St. Mary's Honor Center,* —— U.S. at ——, 113 S.Ct. at 2755 (internal quotations omitted). Moreover, in context, counsel's statement to the court may reasonably be understood as a candid admission of lack of knowledge why any particular member of the committee voted as he or she did.

"CART is secret ballot. I have no idea why." On this record, the district court could reasonably find that this statement by counsel was not an admission that no legitimate, nondiscriminatory reason had been articulated.

■ Plaintiff implied in oral argument and in his brief that entry of the minutes in the record was not sufficient to meet defendants' burden of production because plaintiff rather than defendants introduced the minutes into evidence. To adopt such a view, however, would be to convert the *Burdine* decision-making structure from an aid to fair adjudication on the merits to a set of procedural snares for the unwary. Plaintiff could set a trap by offering evidence that, if offered by defendant, would meet defendant's burden. Plaintiff could then wait to spring the trap until defendant had rested (without wasting public and private resources by offering again, as part of defendant's case, precisely the same evidence that the court had already received in evidence, without any suggestion by either party that the court had received or should have received the evidence for a limited purpose). This argument would deserve no more attention now even if it had been openly presented to the district court, not just on appeal.

We conclude that the district court did not err in determining that defendants met their burden of production.

## B. District Court's Finding of No Discrimination

Plaintiff further contends that the district court erred in finding that plaintiff failed to prove intentional discrimination by defendants.

■ A court of appeals may disturb a trial court's finding on this question of ultimate fact only if it is clearly erroneous. *See Anderson v. Bessemer City*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985); *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 152 (1st Cir.1990).

■ This court has previously suggested that trial court review of tenure decisions should be guided by an appropriately deferential standard.

A court may not simply substitute its own views concerning the plaintiff's qualifications for those of the properly instituted authorities; the evidence must be of such strength and quality as to permit a reasonable finding that the denial of tenure was "obviously" or "manifestly" unsupported.

*Brown v. Trustees of Boston University*, 891 F.2d 337, 346 (1st Cir.1989). The district court appropriately applied this standard to the present case, even though this is a case not of denial of tenure but of denial of appointment to a tenure track position. The district court's finding is amply supported by the record.

■ Plaintiff points to two major categories of evidence that he contends warrant a determination of clear error. The first consists of allegedly derogatory or prejudiced statements made by various people who participated in reviewing Dr. Bina's application for a tenure track position. These statements, however, do not support a determination that the district court committed clear error. The few instances of statements that are reasonably construed as insensitive or narrow-minded were instances of statements made in 1987 and 1988. Even if construed in the most negative light, Dr. MacKay's comment in 1987 and the comments by him and others during the April and June 1988 CART meetings do not compel a finding that the 1989 meeting and decision were infected by intentional discrimination. Indeed, the minutes of the May 1989 meeting, to which the district court understandably assigned great weight, reveal not a hint of discriminatory animus.

Nor did the district court clearly err in finding that most of the statements plaintiff points to were properly understood in a neutral, nondiscriminatory light. For example, references to audience difficulty in understanding Dr. Bina may reasonably be interpreted as expressing a concern about his ability to communicate to students rather than discriminatory animus based on ethnicity or accent.

Plaintiff makes, also, an implied disparate treatment claim when he relies on the "different" treatment accorded Dr. Bina. The

district court found that, between 1986 and 1991, there was only one other applicant besides Dr. Bina who was recommended for a tenure track position by his department, yet rejected by CART. That person, in contrast to Dr. Bina, had no research experience. We can not determine that the district court committed clear error in declining to infer that this break in the hiring pattern was a result of intentional discrimination. This is a case where statistical evidence "might be suggestive or it might be meaningless," and we do not second-guess the district court's decision to attach minimal weight to it. *See Cumpiano,* 902 F.2d at 156.

We decline to disturb the district court's finding that none of the defendants intentionally discriminated against Dr. Bina.

### III. Breach of Contract

Plaintiff bases his claim of breach of contract on two flawed assertions. First, he argues that he accepted the College's offer within a reasonable time. Second, he argues that the offer was made irrevocable because supported by consideration. The second is merely a variant of the first, since irrevocability is never permanent but only for a reasonable period.

■ The question whether a contract has been formed is one of fact so long as the evidence does not point unerringly in a single direction but is capable of supporting conflicting inferences. *Crellin Technologies, Inc. v. Equipmentlease Corp.,* 18 F.3d 1, 7 (1st Cir.1994). Thus, the district court's finding that no contract was formed is subject to clear error review.

■ Plaintiff's appeal is meritless because the June 27 offer expired by the time of Dr. Bina's purported acceptance on August 31. It does not matter, for purposes of this appeal, whether the offer was extinguished because Dr. Bina rejected it—as is apparent from the record—or because the College withdrew it—as is clear from the record. At no point before August 31 did Dr. Bina express a "definite and unequivocal" acceptance, *see Ardente v. Horan,* 117 R.I. 254, 259, 366 A.2d 162, 165 (1976), and by then it was too late. Even if Father Cun-

ningham's alleged extension of the offer "for a few days" beyond the 10–day period were understood to keep it open until the July 26 meeting with Dr. MacKay—a contention we decline to endorse—the district court's finding that Dr. Bina rejected the offer at that meeting was not clearly erroneous. In any event, the College terminated its offer by the August 3 letter, well before Dr. Bina's purported acceptance. *See Merritt Land Corp. v. Marcello,* 110 R.I. 166, 171–72, 291 A.2d 263, 266 (1972).

We therefore conclude that the district court did not err in finding that no contract was formed between Dr. Bina and the College.

The judgment of the district court is *affirmed.* Costs are awarded to appellees.