Olga FORSYTHE, Plaintiff,

v.

**BOARD OF EDUCATION OF UNIFIED SCHOOL DISTRICT NO. 489, HAYS, KANSAS, Defendant.**

No. 95–4195–SAC.

United States District Court,
D. Kansas.

Feb. 6, 1997.

Brent C. Moerer, Topeka, KS, for Olga Forsythe.

William W. Jeter, Jeter and Moran, Hays, KS, Fred W. Rausch, Jr., Fred W. Rausch, Jr., Chtd., Topeka, KS, for Unified School Dist. No. 489, Ellis County, KS.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

Olga Forsythe brings this discrimination case against her former employer, the Board of Education of Unified School District No. 480, Hays, Kansas (Board). Forsythe, who was employed as a Spanish teacher at Hays High School, contends that the Board's decision to not renew her employment contract was the product of discrimination on the basis of her Hispanic accent and national origin. The Board denies liability, arguing that its decision not to renew Forsythe's contract was not due to her accent or national origin, but was instead based upon its conclusion that Forsythe's students could not understand her instructions, comments and assignments, that she was unable to effectively teach students, and that many parents and students had complained about her performance.

This case comes before the court upon the Board's motion for summary judgment. The Board's statement of uncontroverted facts and memorandum in support of its motion are forty pages. After Forsythe filed her response, the Board filed three "supplemental briefs" in support of its original motion. The supplemental briefs do not purport to be reply briefs, but instead raise several new or additional points and independent bases for granting dispositive relief to the defendant. Forsythe responds, challenging the propriety of filing such briefs without leave of the court. The Board responds, arguing that "there is nothing in this Court's Scheduling Order or in the Final Pretrial Order which precludes either party from filing supplemental briefs in support of that party's position."

### Supplemental Memoranda

■ Although other litigants have in the past attempted to circumvent the court's page limitations by expanding margins and/or shrinking the font size to near microscopic proportions, *see, e.g., Phelps v. Hamilton*, 840 F.Supp. 1442, 1448 (D.Kan.1993) ("Briefs using such a 'favorite undergraduate gambit' may be struck in the court's discretion."), or by the filing of piecemeal dispositive motions, until now no one has been so brazen as to file a "supplemental" brief that is nothing more a thinly veiled attempt to circumvent this court's page limitation. It should be self-evident that such a transparent attempt to thwart the court's page limitations would not be countenanced by the

court.[1] The court believes that its page limitations are reasonable[2] and those limitations serve several valuable purposes. By requiring counsel to decoct their arguments to their most concise form, judicial resources are conserved. So are a few trees.

In general, parties are able to concisely set forth uncontroverted facts, as well as all of their arguments and authorities supportive of their respective position, within the page limitations set by the court. On those rare occasions that a case has presented complex legal or factual issues, this court has granted leave to file briefs in excess of the 40 page limitations.[3]

Although conceding that several of the cases cited in one of its supplemental memorandum are not "new" authority but simply authority that could not be squeezed into the page limitations set by the court, the Board contends that one recent case, *Thomas v. St. Louis Bd. Educ.*, 933 F.Supp. 817 (E.D.Mo. 1996), suggests this court lacks subject matter jurisdiction. As Forsythe correctly notes, that case was decided months before the defendant filed its motion for summary judgment. While the court always welcomes counsel to bring new, relevant authority to its attention, the court is uncertain that *Thomas* falls within that category. In any event, Forsythe has not addressed the new arguments raised for the first time in the defendant's supplemental briefs. Because the court can decide the pending motion without considering the new arguments advanced in the defendant's supplemental briefs, the court expresses no opinion on any of those arguments, including the defendant's arguments flowing from the *Thomas* decision. In sum, the court has not considered any new arguments advanced for the first time in any of the Board's supplemental briefs in resolving the pending motion for summary judgment.

## Summary Judgment Standards

A court grants a motion for summary judgment if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law governing the suit dictates which facts are material or not. *Id.* at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will ... preclude summary judgment." *Id.* There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]here are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988).

The movant's burden under Rule 56 of the Federal Rules of Civil Procedure is to lay out the basis of its motion and to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). "A movant is not required to provide evidence negating an opponent's claim." *Committee for First Amendment v. Campbell,*

---

1. Nevertheless, in light of this case and other cases in which litigants have attempted to circumvent the page limitations established by this court, the court has recently revised its Civil Procedural Guidelines to foreclose such artifices in the future.

2. Forty pages for an opening or responsive brief is a generous limitation that exceeds many used in other district courts. *See Perry v. Saint Francis Hosp. & Medical Center*, 886 F.Supp. 1551, 1553, n. 1 (D.Kan.1995) ("The court believes that its page limitations are generous and fair and expects every party to abide by them.").

3. The court will allow longer briefs only in the plainest cases of exceptional circumstances, extremely complex motions or factually difficult cases, and only after counsel have demonstrated a serious attempt at complying with the page limitation.

Having reviewed the Board's motion and accompanying memoranda, the court is convinced that this case is not one of such complexity that it could not have been submitted on briefs falling within the page limitations set by the court. In any event, the Board should have sought leave of the court prior to filing its "supplemental" briefs.

962 F.2d 1517, 1521 (10th Cir.1992) (citation omitted).

If the moving party meets its burden, then it becomes the nonmoving party's burden to show the existence of a genuine issue of material fact. *Bacchus Industries, Inc. v. Arvin Industries, Inc.*, 939 F.2d 887, 891 (10th Cir.1991); *see Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) ("If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case."). When the nonmoving party will have the burden of proof at trial, " 'Rule 56(e) ... [then] requires the nonmoving party to go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun*, 956 F.2d 949, 951 (10th Cir.1992) (citations omitted); *see Martin*, 3 F.3d at 1414 (non-moving party cannot rest on the mere allegations in the pleadings). "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 929 (7th Cir. 1995); *see Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 479 (1st Cir.1993) ("Optimistic conjecture, unbridled speculation, or hopeful surmise will not suffice."). The court views the evidence of record and draws inferences from it in the light most favorable to the nonmoving party. *Burnette v. Dow Chemical Co.*, 849 F.2d at 1273.

More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

### Uncontroverted Facts

Based upon its review of all of the materials submitted by the parties, the court concludes that there is insufficient evidence for a rational factfinder to conclude that the Board's decision to not renew Forsythe's employment contract was the product of unlawful discrimination. In reaching this conclusion, the court has carefully considered all of the facts and arguments advanced by Forsythe in opposition to the Board's motion. Despite Forsythe's personal "feeling" that the Board's decision to not renew her employment contract was based upon invidious discrimination, those beliefs are insufficient to create a genuine issue of material fact precluding summary judgment.[4]

Rather than slogging through each and every point raised by both parties, the court has streamlined the uncontroverted facts to a minimum. The court will address Forsythe's arguments in the analysis section of this memorandum and order.

Forsythe is a Hispanic female who was born in Cuba. Forsythe has been a school

---

4. It is well settled that the plaintiff's own "belief" or "feeling" that he was the victim of disparate treatments is insufficient, standing alone, to preclude judgment as a matter of law. *Arzate v. City of Topeka*, 884 F.Supp. 1494, 1501 (D.Kan.1995); *see Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1426 n. 4 (10th Cir.1993) ("A plaintiff's mere belief that defendant's explanation is pretextual or that he was treated unfairly, in and of itself, is insufficient as a matter of law to prove age discrimination."); *Cf Hanson v. City Okla-*

*homa*, No. 94–6089, 1994 WL 551336, 1994 U.S.App. LEXIS 28248 (10th Cir. Oct. 11, 1994) (plaintiff's subjective beliefs as to the defendant's motive insufficient to create a genuine issue of fact of whether race was a motivating factor) (unpublished); *Money v. Great Bend*, 783 F.Supp. 563, 574 (D.Kan.1992) ("[T]he plaintiffs' 'feeling' that they are the victims of racial discrimination fails to demonstrate a material issue of fact in the absence of supporting evidence.").

teacher since 1978. Forsythe was employed by the Board in August 1992 as a high school Spanish teacher. Despite receiving generally favorable student comments and employer reviews during her first two years, several students (and the parents of those students) voiced repeated concerns that they had difficulty understanding Forsythe. Students having difficulty understanding Forsythe, and school personnel addressing student complaints, primarily attributed those communication problems to Forsythe's fast manner of speech. However, some of the communication problems were deemed to be related to Forsythe's accent. Some students indicated that at times they could not tell if Forsythe was speaking in Spanish or English. Forsythe concedes that she speaks with a strong accent and that her fast manner of speech could have been one of the reasons some students indicated that they could not understand her.

Although employees of the defendant offered to assist Forsythe in addressing what were perceived to be shortcomings in her teaching manner and skills, those efforts were sometimes met with resistance. Persons offering assistance to Forsythe indicated that she refused to consider areas identified as problems as areas which needed improvement. Employees of the board, including the school's principal, who recommended not renewing Forsythe's contract identified both student complaints and resistance or unwillingness to change as reasons for not extending Forsythe's employment.

On April 4, 1994, Forsythe's teaching contract was not renewed by the Board. K.S.A. 72–5436 *et seq.*, does not require that a reason for nonrenewal be given to a non-tenured teacher, and none was given by the Board until Forsythe pursued her discrimination claim. Forsythe was a non-tenured teacher at the time of the nonrenewal of her teaching contract and had no property interest in her employment after the 1993–94 school year.[5]

Forsythe's position as a Spanish teacher at Hays High School was filled by Elsa Taylor, a Hispanic female who was born in Spain and who had a Hispanic accent at the time of her employment by the Board.

Five of the seven members of the defendant board of education who voted to nonrenew Forsythe's contract for the 1994–1995 school year were members of the board of education at the time Forsythe was originally hired for the 1992–1993 school year. Forsythe was employed as a full-time Spanish teacher by Thomas Moore Preparatory School, Hays, Kansas, for the 1994–95 school year.

### The Legal Framework Relevant to Forsythe's Title VII Claims [6]

In the absence of direct evidence of discrimination, a plaintiff in Title VII actions "must abide by the complicated formula first set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973), for proving discrimination by indirect evidence." *Pilditch v. Board of Educ. of City of Chicago,* 3 F.3d 1113, 1116 (7th Cir.1993), *cert. denied,* 510 U.S. 1116, 114 S.Ct. 1065, 127 L.Ed.2d 385 (1994); *see Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5th Cir.1994) (referring to the inferential proof process as the three-step McDonnell Douglas–Burdine "minuet."). The plaintiff in such a case must establish, by a preponderance of the evidence, a "prima facie" case of racial discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 505–06, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407, 415 (1993).

To establish a prima facie case of disparate treatment the plaintiff must show (1) she was a member of a protected class; (2) she was qualified and satisfactorily performing her job; and (3) she was terminated (or otherwise subject to discipline) under circumstances giving rise to an inference of discrim-

---

**5.** Had her teaching contract been renewed by the Board for an additional year, Forsythe would have enjoyed the tenure protections set forth in the Teacher Due Process Act, K.S.A. 72–5436 *et seq. See* K.S.A. 72–5445(a); *Bauer v. U.S.D. No. 452,* 244 Kan. 6, 9, 765 P.2d 1129 (1988) ("The statutory protections of the Act are conferred upon teachers who have successfully completed the required number of years of employment in the school district.").

**6.** At no point does the plaintiff specifically argue that this is a mixed-motive case.

ination. *Martin,* 3 F.3d at 1417; *see E.E.O.C. v. Wiltel Inc.,* 81 F.3d 1508, 1515 (10th Cir.1996); *Luna v. City & County of Denver,* 948 F.2d 1144, 1147 (10th Cir.1991) (prima facie case where plaintiff claims he was denied promotion).

If the plaintiff is successful in establishing a prima facie case, the defendant is presumed to have discriminated against the plaintiff unless the defendant can articulate legitimate, non-discriminatory reasons for the employment decision. *Pilditch,* 3 F.3d at 1116. As the Supreme Court recently explained:

> Under the *McDonnell Douglas* scheme, "establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *[Texas Dept of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207.] To establish a "presumption" is to say that a finding of the predicate fact (here, the prima facie case) produces "a required conclusion in the absence of explanation" (here, the finding of unlawful discrimination). 1 D. Louisell & C. Mueller, *Federal Evidence* § 67, p. 536 (1977). Thus, the *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case—i.e., the burden of "producing evidence" that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason." *Burdine,* 450 U.S. at 254 [101 S.Ct. at 1094]. "The defendant must clearly set forth, through the introduction of admissible evidence," reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. *Id.,* at 254–255, and n. 8 [101 S.Ct. at 1094, and n. 8]. It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff," *id.,* at 253 [101 S.Ct. at 1093].

*St. Mary's,* 509 U.S. at 506–08, 113 S.Ct. at 2747–48, 125 L.Ed.2d at 416.

If the defendant fails at this juncture to meet its burden of production, "i.e., has failed to introduce evidence which, *taken as true,* would *permit* conclusion that there was a nondiscriminatory reason" for the employer's actions, the plaintiff is entitled to judgment as a matter of law. *St. Mary's,* 509 U.S. at 508–11, 113 S.Ct. at 2748–49, 125 L.Ed.2d at 417–418. "If, on the other hand, the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *Id.* at 510, 113 S.Ct. at 2749, 125 L.Ed.2d at 418. "The presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture." *Id.; see Pilditch,* 3 F.3d at 1116.

If the defendant has carried its burden of production, in order to prevail the plaintiff must demonstrate that the defendant's proffered explanation is pretextual *and* ultimately that he was the victim of intentional discrimination. *Pilditch,* 3 F.3d at 1116; *see St. Mary's,* 509 U.S. at 509–11, 514–17, 113 S.Ct. at 2748–49, 2751–52, 125 L.Ed.2d at 418, 421–422 ("[A] reason cannot be proved to be 'a pretext *for discrimination'* unless it is shown *both* that the reason was false, and that discrimination was the real reason."); *E.E.O.C v. Flasher Co. Inc.,* 986 F.2d 1312, 1320 (10th Cir.1992). Therefore, "showing pretext alone is not sufficient for the plaintiff to carry the day, although it may support an inference that the real reason for the employer's action is discriminatory." *Pilditch,* 3 F.3d at 1116 (citing *St. Mary's,* 509 U.S. at 510–11, 113 S.Ct. at 2749).

### Discrimination on the Basis of Foreign Accent

"The Tenth Circuit has held that '[a] foreign accent that does not interfere with a Title VII claimant's ability to perform duties of the position he has been denied is not a legitimate justification for adverse employment decisions.'" *Arzate v. City of Topeka,* 884 F.Supp. 1494, 1504 (D.Kan.1995) (quoting *Carino v. University of Oklahoma Bd. of Regents,* 750 F.2d 815, 819 (10th Cir.1984)). However, language difficulties that interfere

with performance of duties may be legitimately considered in employment decisions. *Id.* (citation omitted). *See also Garcia v. Spun Steak Co.,* 998 F.2d 1480, 1487 (9th Cir.1993) ("[T]here is nothing in Title VII which requires an employer to allow employees to express their cultural identity."), *rehearing denied,* 13 F.3d 296 (9th Cir.) (en banc), *cert. denied,* 512 U.S. 1228, 114 S.Ct. 2726, 129 L.Ed.2d 849 (1994).

**Decisions Related to or Affecting Tenure**

In *Jiminez v. Mary Washington College,* 57 F.3d 369 (4th Cir.1995), *cert denied,* — U.S. ——, 116 S.Ct. 380, 133 L.Ed.2d 304 (1995), the Fourth Circuit reversed as clearly erroneous the district court's finding that the defendant had discriminated against a black professor from Trinidad, West Indies.[7] In reversing the district court, the court of appeals stated in part:

> We commence with the premise that while Title VII is available to aggrieved professors, we review professorial employment decisions with great trepidation. *See Fields v. Clark Univ.,* 966 F.2d 49, 54 (1st Cir.1992), *cert. denied,* 506 U.S. 1052, 113 S.Ct. 976, 122 L.Ed.2d 130 (1993); *Brousard–Norcross v. Augustana College Ass'n,* 935 F.2d 974, 975–76 (8th Cir.1991); *Zahorik v. Cornell Univ.,* 729 F.2d 85, 92–93 (2d Cir.1984); *Kunda v. Muhlenberg College,* 621 F.2d 532, 548 (3d Cir.1980). We must be ever vigilant in observing that we do not "sit as a 'super personnel council' to review tenure decisions," *Brousard–Norcross,* 935 F.2d at 976, always cognizant of the fact that professorial appointments necessarily involve "subjective and scholarly judgments," with which we have been reluctant to interfere, *Smith v. University of North Carolina,* 632 F.2d 316, 345–47 (4th Cir.1980). Aptly articulating this rubric, the Third Circuit cogently cautioned:
>
> > [C]ourts must be vigilant not to intrude into [tenure] determination[s], and should not substitute their judgment for that of the college with respect to the qualifications of faculty members for

promotion and tenure. Determinations about such matters as teaching ability, research scholarship, and professional stature are subjective, and unless they can be shown to have been used as the mechanism to obscure discrimination, they must be left for evaluation by the professional, particularly since they often involve inquiry into aspects of arcane scholarship beyond the competence of individual judges.

*Kunda,* 621 F.2d at 548. The federal courts have adhered consistently to the principle that they operate with reticence and restraint regarding tenure-type decisions. *See, e.g., Bina v. Providence College,* 39 F.3d 21, 26 (1st Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1406, 131 L.Ed.2d 292 (1995); *Lieberman v.Gant,* 630 F.2d 60, 67 (2d Cir.1980). Our review is narrow, being limited to determining "whether the appointment or promotion was denied because of a discriminatory reason." *Smith,* 632 F.2d at 346. In other employment contexts, we have explained that Title VII is not a vehicle for substituting the judgment of a court for that of the employer. *See EEOC v. Clay Printing Co.,* 955 F.2d 936, 946 (4th Cir.1992) (noting that the federal courts should "not ... direct the business practices of any company"). Title VII, therefore, is not a medium through which the judiciary may impose professorial employment decisions on academic institutions.

57 F.3d at 376–77.

**Analysis**

■ Although Forsythe identifies a few instances in which some employee of the Board may have mentioned or commented on her accent in an uncomplimentary or derogatory manner,[8] the majority of those comments arose in the context of evaluating Forsythe's teaching skills or addressing student/parent concerns. Nothing presented by Forsythe casts any doubt on the fact that a number of students voiced concerns that

---

**7.** Although *Jiminez* arose in the context of a plaintiff pursuing a college tenure track teaching position rather than a high school teacher seeking renewal of her contract, many of the court of appeals' observations concerning employment decisions that involve issues of tenure are gener-

ally relevant in evaluating Forsythe's claims against the Board.

**8.** For example, in her deposition Forsythe testifies that Principal Theresa Davidson once stated "[O]h, God, you have a very strong accent."

they had difficulty understanding her speech as she was teaching Spanish. As the ability to communicate is one of the hallmarks of effective teaching, the Board's concern that Forsythe was unwilling or unable to slow down or otherwise address students' complaints that they could not understand her is undoubtedly the basis of a legitimate business decision to not renew her contract. The limited instances of comments which could reasonably be construed as derogatory, coupled with Forsythe's feeling that she was the victim of discrimination, are insufficient to create a genuine issue of material fact precluding summary judgment. *See Jiminez,* 57 F.3d at 380 ("We agree with the First Circuit that 'references to audience difficulty in understanding [a Title VII professor seeking tenure] may reasonably be interpreted as expressing a concern about his ability to communicate to students rather than discriminatory animus based on ethnicity or accent.'") (quoting *Bina,* 39 F.3d at 26); *Ang v. Procter & Gamble Co.,* 932 F.2d 540, 549 (6th Cir.1991) ("Unlawful discrimination does not occur, however, when a plaintiff's accent affects his ability to perform the job effectively."). Nor do Forsythe's self-appraisals of her teaching skills create a genuine issue of material fact. *See Schultz v. General Elec. Capital Corp.,* 37 F.3d 329, 334 (7th Cir.1994) ("[A]n employee's own self-serving remarks standing alone are insufficient to raise doubt as to the credence of the employer's explanation for termination."); *see Furr v. Seagate Technology, Inc.,* 82 F.3d 980, 988 (10th Cir.1996) ("It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance.").

In sum, the plaintiff has produced insufficient evidence for a rational factfinder to conclude that the reasons offered by the Board for not renewing her teaching contract were pretexts for invidious discrimination.

IT IS THEREFORE ORDERED that the Board's motion for summary judgment (Dk.31) is granted.