**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WALTER WILLIAMS,
Plaintiff-Appellant,

v.

DYNATECH COMMUNICATIONS,
INCORPORATED,
Defendant-Appellee.

No. 97-1861

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-96-1575-A)

Submitted: August 11, 1998

Decided: September 11, 1998

Before MURNAGHAN, WILKINS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Harvey Herbert Perritt, Jr., Fairfax, Virginia, for Appellant. Steven R.
Semler, SEMLER & PRITZKER, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Walter Williams appeals the district court's order granting summary judgment in favor of Dynatech Communications, Inc. (Dynatech), and dismissing his claim of racial discrimination in violation of Title VII. See 42 U.S.C. § 2000e-2 (1994). Williams, an African American male, claimed that numerous employment decisions leading to his eventual termination from his position in Dynatech's sales force were racially motivated. In addition, his complaint claimed that Dynatech violated the Americans with Disabilities Act, 42 U.S.C. § 12101 (1994) (ADA), and included state law claims of breach of contract and breach of the covenant of good faith and fair dealing.

Dynatech, a telecommunications technology concern, employed Williams as a member of its sales force for almost ten years. Williams's difficulties with the company began at the end of fiscal year 1991 (FY 1991), when Dynatech declined to award Williams his quota-based bonus. Dynatech concluded that Williams had not reached the agreed-upon level of sales for that year. From 1991 until 1994, when he was terminated, Williams held a number of positions in the Dynatech sales organization. In 1992, Dynatech split his position as Mid-Atlantic Regional General Manager for marketing reasons, and Williams was installed as the individual responsible for Packet technology. Later that year, Williams was reassigned to the position of Packet Sales Manager when another person was promoted to the newly created position of Mid-Atlantic Regional Manager for both Packet and Matrix sales. As Packet Sales Manager, Williams was responsible for a smaller geographic area. Eventually, Williams accepted an offer from the company to relocate to Atlanta to become the Southeast States Regional Sales Manager.

Williams delayed his relocation to Atlanta and let three company-imposed deadlines for moving lapse. After the third deadline expired, Dynatech threatened to terminate Williams if he did not relocate to Atlanta. Williams responded to the impending termination with a letter from his physician stating that Williams's course of treatment for sleep apnea would be disturbed by his relocation. Ultimately, Williams did not move to Atlanta, and Dynatech placed him on tempo-

2

rary paid medical leave to control his sleep apnea. When he returned from his sick leave and was reassigned as the Major Accounts Manager, Williams received a facsimile transmission of a drawing that depicted, in a stereotypic manner, an African American man extending his hand with the caption, "Welcome Back, Mr. Williams." Although the fax was sent from one of the four fax numbers in the central offices of Dynatech, the sender of the fax was never identified.

In his position as Major Accounts Manager, Williams's geographic territory was smaller than before, but the territory included Philadelphia, where Williams's home was located. Nonetheless, Williams struggled in his new position. After a Performance Improvement Program failed to ameliorate Williams's poor sales totals, Williams was terminated, having achieved only 13% of his FY 1994 quota.

Williams lodged an unsuccessful complaint with the Equal Employment Opportunity Commission. The complaint identified six actions on the part of Dynatech which Williams claimed were discriminatory. Williams claimed that he was denied a bonus to which he was entitled in FY 1991, was reassigned to progressively less lucrative sales regions, was forced onto short term disability as a result of his sleep apnea, was given false and unfair performance ratings, was demoted, and was eventually fired.[1] After Williams received his right to sue letter, he instituted this action. The district court granted Dynatech's motion to dismiss Williams's claims for violations of the ADA. Following discovery, the district court granted summary judgment for Dynatech on Williams's racial discrimination claim and his state law claims arising from the alleged breach of contract. Finding no error to the district court's ruling, we affirm the grant of summary judgment.

This court reviews the district court's award of summary judgment

_____

[1] In his opposition to Dynatech's motion for summary judgment, and again in his brief on appeal, Williams seems to identify a discrepancy in base pay between himself and several white employees as another discriminatory adverse employment action on the part of Dynatech. However, because Williams did not exhaust that claim administratively, it is not properly a part of his Title VII lawsuit. See Love v. Pullman Co., 404 U.S. 522, 523 (1972).

in discrimination cases de novo. See Jones v. Wellham, 104 F.3d 620, 626 (4th Cir. 1997). Although summary judgment should be used sparingly in employment discrimination cases, it is appropriate where there is no genuine dispute of material fact. See Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004-05 (4th Cir. 1987). On a motion for summary judgment, the evidence is viewed in a light most favorable to the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986). Here, the district court assumed the existence of a prima facie case of racial discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). With that assumption in place, the burden shifts to the employer to rebut the inference of discrimination with evidence of a legitimate nondiscriminatory reason for the termination. See Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994). We conclude that viewing the evidence in a light most favorable to Williams, Dynatech has met this burden.

In this case, Dynatech proffered legitimate reasons for each action Williams identified as an adverse employment decision. Williams was denied a bonus in FY 1991 because Dynatech determined that he had not reached the $4 million quota they set. With respect to his alleged demotion and reassignment to progressively less lucrative territories,[2] Williams's Mid-Atlantic territory was divided to allow for the promotion of another African-American employee. The company reassigned Williams to Atlanta because there was a vacancy in the Regional General Manager position in that region. Williams was reassigned from that region to a smaller territory surrounding Philadelphia because of his unwillingness or inability to relocate to Atlanta. Williams's superiors placed him on disability because of his sleep apnea after Williams suggested that his condition prevented him from relocating to Atlanta. Finally, Williams received poor evaluations and was eventually fired because of his poor performance. In fiscal year 1994, he attained the lowest percentage of his sales quota of any employee with Dynatech.

Once the defendant provides a nondiscriminatory reason for the adverse action, as Dynatech has, the plaintiff must show by a prepon-

_____

[2] Williams has presented no evidence that any territory was more or less lucrative than another and this court will not assume that because a territory is geographically smaller it is necessarily less lucrative.

4

derance of the evidence that the employer's asserted justification for taking adverse employment action was merely pretextual, and "that discrimination was the real reason" behind the adverse employment action. See Saint Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). The employer is entitled to summary judgment if the plaintiff fails to raise a factual dispute regarding the proffered reasons for the alleged discriminatory act. See Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993). Williams has failed to create a factual dispute regarding Dynatech's motivation for the various decisions affecting Williams.

In an effort to show that Dynatech's reasons were pretextual, Williams makes bald assertions regarding the unfavorable nature of his reassignment to Atlanta and the unrealistic nature of his quota, but fails to substantiate his own opinion with evidence of record. Cf. Williams v. Pharmacia, Inc., 137 F.3d 944, 949 (7th Cir. 1998) (describing plaintiff's expert witness evidence regarding sales quota for given territory). Williams also suggests that he actually reached his agreed upon quota in FY 1991, but was nonetheless denied his bonus, suggesting that the company's reason for denying the bonus was pretext. However, as the district court concluded, Dynatech believed that there was no contract formed regarding a quota of $3.7 million in sales, so there is no evidence that the denial of the bonus was discriminatory. Moreover, the crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment. See Jiminez v. Mary Washington College, 57 F.3d 369, 383 (4th Cir. 1995). For this reason, a review by this court of the esoteric practices of a sales concern with respect to parsing out of territories, establishing quotas, and awarding benefits, without more specific evidentiary guidance from the plaintiff, is simply not appropriate.

Finally, Williams asserts that a single facsimile document that he received after returning from his disability leave was evidence of pretext. Even assuming the worst motivation on behalf of the sender of the stereotypic and caricaturish depiction of an African American, the evidence is the graphic equivalent of a derogatory comment by a co-worker. While derogatory remarks, and by extension, graphic depictions, may be direct evidence of discrimination, see Wilhelm v. Blue Bell, Inc., 773 F.2d 1429, 1433-34 (4th Cir. 1985), "Title VII was not

5

designed to created a federal remedy for all offensive language and conduct in the workplace." Hopkins v. Baltimore Gas & Elec., 77 F.3d 745, 754 (4th Cir.), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3240 (U.S. Oct. 7, 1996) (No. 95-1961). The allegedly discriminatory depiction, therefore, cannot be stray or isolated. According to the Seventh Circuit, "[u]nless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of [discrimination]." McCarthy v. Kemper Life Ins. Cos., 924 F.2d 683, 686-87 (7th Cir. 1991). Williams has not identified the sender of the fax, or his or her intent in sending the drawing. As a result, we cannot conclude that the single fax was related to any of the adverse employment decisions and must decide that it is not, therefore, evidence of discrimination.

Williams also contends on appeal that the district court erred in granting summary judgment in favor of Dynatech on his claim for a breach of contract. In his complaint, Williams alleged that because he exceeded a sales plateau of $3.7 million, he was entitled to Dynatech's bonus package. The district court determined that no contract had been formed regarding a sales quota of $3.7 million and granted summary judgment in favor of Dynatech.

The formation of a contract is a question of law, which we review de novo. See Nehi Bottling Co. v. All-American Bottling Corp., 8 F.3d 157, 162 (4th Cir. 1993). When, however, a ruling depends upon an evaluation of evidence extrinsic to the contract, the standard of review is more deferential, and this court reviews only for clear error. See Hendricks v. Central Reserve Life Ins. Co., 39 F.3d 507, 512 (4th Cir. 1994); see also Bina v. Providence College, 39 F.3d 21, 27 (1st Cir. 1994). A district court commits clear error only when the reviewing court is left with "the definite and firm impression that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). In this case, the district court's ruling hinged on its evaluation of the events after Dynatech offered its bonus package for FY 1991 to Williams.

There has been no clear error in this case. Williams admits in his brief on appeal and his deposition testimony that he rejected the offer of a $3.7 million quota in favor of a $4 million quota and additional staff. That quota package amounted to the contract between the par-

6

ties governing Williams's quota-based incentives. Nonetheless, Williams sued Dynatech for failing to award his bonus based on the $3.7 million figure. The district court did not clearly err in concluding that there was no contract formed setting Williams's quota at $3.7 million. As a result, the court properly granted summary judgment.

It appears from the record that Dynatech failed to hire the additional staff promised in setting the $4 million quota.[3] Williams suggests that because Dynatech violated the $4 million quota agreement, the previously rejected $3.7 million quota should govern his bonus package for FY 1991. In support of this position, he refers the court to our decision in United States v. Newport News Shipbuilding & Dry Dock Co., 571 F.2d 1283, 1286 (4th Cir. 1978). In that case, we stated that neither party is bound to an agreement when an offer or counter-offer is accepted subject to a condition, until that condition is satisfied. See id. (quoting Orient Mid-East Great Lake Serv. v. International Export Lines, Ltd., 315 F.2d 519, 522 (4th Cir. 1963)). The case provides strong support for the proposition that if the additional staffing was a condition of acceptance, neither party should be bound to the $4 million quota. However, it does not lead us to the conclusion that the offer of a $3.7 million quota, ultimately rejected by both parties, is resurrected to bind the parties. The district court did not err in granting summary judgment in favor of Dynatech.

Finding no merit to any of Williams's claims of error, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.

AFFIRMED

_____

[3] Because of this, it appears that Dynatech violated the terms of the agreed-upon bonus package. We find it unnecessary to comment on the legal effect of Dynatech's failure to hire additional staff, as Williams has not claimed at any stage of this litigation that Dynatech should be liable for a breach of the $4 million bonus package agreement. Neither has he advanced any evidence that would support such a claim.